IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUSSELL ALAN CLEMO,                          No. 2:21-cv-00007-HZ

                    Plaintiff,              OPINION & ORDER

        v.

MR. FLAK, *dentist*, *Snake River*
*Correctional Institution*,

                    Defendant.

Russell Alan Clemo
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR 97914-8335

            Plaintiff Pro Se

Katherine Beck
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301

            Attorney for Defendant

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Russell Alan Clemo, an inmate at the Snake River Correctional Institution (SRCI), brings this action against Dr. Kevin Flash[1], a dentist employed by Oregon Department of Corrections, alleging medical negligence and claims under 42 U.S.C. § 1983 ("Section 1983"). Defendant moves for summary judgment. For the following reasons the Court grants the motion.

## BACKGROUND

Plaintiff makes a series of allegations related to the dental care he received from Defendant Dr. Kevin Flash as an inmate at Snake River Correction Institution. On December 4, 2018, Plaintiff had a dental cleaning. Shook Decl. ¶ 4, ECF 43. Plaintiff alleges this cleaning damaged his teeth by stripping the poly enamel coating that protects against cavities. Second Am. Compl. at 6, 20, ECF 8. On December 27, 2018, Plaintiff had a follow-up, where he indicated that he had staining on tooth #7. Shook Decl. ¶ 4. On January 16, 2019, Plaintiff had a second dental cleaning. *Id.* Plaintiff alleges that this cleaning was conducted sooner than the typical time between teeth cleanings and further damaged his enamel. Second Am. Compl. at 6–7, 21. He alleges that despite the two cleanings he has developed new cavities that are "visible to the naked eye." *Id.* at 27.

On September 16, 2019, Plaintiff had a filling placed. Answer ¶ 6. Plaintiff alleges that Defendant Flash improperly filled his left molar and left him with an exposed nerve. Second Am. Compl. at 22. On September 30, 2019, Plaintiff had a "recall exam" where it was determined that that he needed to have the filling repaired. Shook Decl. ¶ 5. On November 4, 2019, Defendant

---

[1] Plaintiff refers to Defendant as Mr. Flak. The Court notes that Defendant's name appears to be Dr. Kevin Flash per the Shook Declaration, ECF 43.

Flash replaced the filling. Answer ¶ 6. Plaintiff alleges that in the intervening weeks he experienced significant pain and suffering. Second Am. Compl. at 22.

On March 1, 2020, Plaintiff had a dental appointment at SRCI with Defendant. Shook Decl. ¶ 6. At this visit, Plaintiff alleges that he requested a partial denture plate of three teeth in the form of a retainer and offered to pay out of pocket to purchase the retainer from an outside provider. Second Am. Compl. at 8. He alleges that he was denied this option. *Id.* Without the partial denture he has problems eating and chewing. *Id.* at 25.

Plaintiff filed several grievances related to these events. On November 24, 2020, SRCI received a grievance from Plaintiff alleging medical negligence related to the two teeth cleanings he received in 2018 and 2019, requesting an additional cleaning, and protesting the denial of his request for outside care and a partial denture. Taylor Decl. Ex. 6 at 4, ECF 42-6. The grievance form was dated November 22, 2020. *Id.* The grievance was returned for correction on November 30, 2020. *Id.* at 3–4. On December 30, 2020, SRCRI received a grievance from Plaintiff, dated December 12, 2020, arguing that the previous grievance complied with the rules. *Id.* at 2. This grievance was returned because "[a]n AIC may not submit a grievance regarding the processing of or response to grievances . . ."[2] *Id.* at 1.

On December 2, 2020, SRCI received a grievance from Plaintiff related to the same issues listed in the first grievance—the dental cleanings, filling, and the denial of a partial denture, and outside care. Taylor Decl. Ex. 4 at 2, ECF 42-4. The grievance is dated November 29, 2020. *Id.* It was denied the same day. *Id.* The grievance was returned to Plaintiff because it was not filed "within 14 calendars days from the date of the incident or issue being grieved" and

---

[2] AIC stands for adults in custody. Taylor Decl. ¶ 6.

because "[a]n AIC may only request review of one matter, action, or incident per grievance." *Id.* at 1–2.

On December 9, 2020, SRCI received a grievance from Plaintiff related to the same issues grieved in the November 24, 2020 grievance form. Taylor Decl. Ex. 3 at 2, ECF 42-3. The next day, the grievance was returned to Plaintiff because it was not filed "within 14 calendar days from the date of the incident or issue being grieved" and because it concerned the same incidents as his prior grievances. *Id.* at 1–2. The grievance form was dated November 29, 2020. *Id.*

On December 9, 2020, SRCI received another grievance from Plaintiff asking for photo documentation of his alleged injuries. Taylor Decl. Ex. 5 at 2, ECF 42-5. The grievance was denied the same day because it did not demonstrate how it qualified as an issue that can be grieved. *Id* at 1.

On December 29, 2020, SRCI received four grievances from Plaintiff. Taylor Decl. Ex. 7, ECF 42-7. These were dated December 20, 2020 and December 21, 2020. *Id.* They all concerned the same alleged medical negligence and requested outside care, teeth implants, and a partial denture. *Id.* at 2–5. One requested photo documentation of his alleged injuries. *Id.* at 5. These grievances were denied because "[a]n AIC cannot have more than four active complaints (grievances, discrimination complaints, or appeals of either) at any time." *Id.* at 1.

On January 5, 2021, Plaintiff filed this action. Compl., ECF 1. He brings five claims for relief under 42 U.S.C. §1983. He alleges (1) Defendant conducted an improper teeth cleaning, (2) Defendant conducted a second improper teeth cleaning, (3) Defendant conducted a negligent tooth filling, (4) Defendant denied Plaintiff a partial denture, and (5) Defendant's negligence resulted in new cavities and caused Plaintiff to fear for his health. First Am. Compl.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

Defendant moves for summary judgment arguing that Plaintiff's claims are barred under the Prison Litigation Reform Act ("PLRA") because he failed to exhaust his administrative remedies prior to filing suit. Plaintiff contends that the grievance procedure was unavailable to him.[3]

I.      Failure to Exhaust

Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, however, only as long as "administrative remedies ... are available." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

Exhaustion is an affirmative defense "that must be pled and proved by a defendant." *Id.* at 1168. The defendant has the burden to prove that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with

---

[3] Defendant also moves for summary judgment on Plaintiff's First Claim for Relief on the ground that he failed to file it within the statute of limitations. The Court declines to address this argument but notes that Defendant's position does not address the date Plaintiff may have learned of his alleged injury. *See Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) (noting that under federal law a "claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action.").

evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Id.* at 1166, 1172.

ODOC's grievance policy encourages AICs to communicate with line staff verbally or in writing as their primary means of resolving disputes prior to filing a grievance, so that prison officials may address questions and complaints at the lowest local level. Taylor Decl. ¶ 6. However, if this does not bring resolution, the AIC may file a grievance if it complies with the rules and there is no other review process available. *Id.* AICs are informed of ODOC's grievance policy during orientation when they first arrive at a facility. *Id.* In addition, the information is contained in the AIC's handbook, and grievance forms are available on all housing units. *Id.* Grievance instructions are also available with the grievance forms. *Id.*

An AIC may grieve: (a-b) the misapplication of or lack of any administrative directive or operational procedure; (c) unprofessional behavior or action which may be directed toward an AIC by an employee or volunteer; (d) any oversight or error affecting an AIC; (e) a program failure unless it is a direct result of a misconduct report where the AIC is found in violation; (f) loss or destruction of property; (g) sexual contact, solicitation, or coercion between an employee or contractor and an AIC; and (h) sexual abuse of an AIC by another AIC if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse. *Id.* ¶ 8. An AIC must grieve the incidence within fourteen calendar days of the date of the incident giving rise to the grievance or must demonstrate why it was not timely filed. *Id.* AICs cannot have more than four active complaints (grievances, discrimination complaints, or

appeals of either) at any one time. *Id.* ¶ 7. An AIC cannot grieve the processing of and responses to grievances and grievance appeals and claims or issues the AIC has pursued or is pursuing in pending litigation in state or federal courts. *Id.* ¶ 9.

An AIC may file an appeal to any grievance response with the functional unit manager. *Id.* ¶ 11. To appeal, the AIC must complete a grievance appeal form and file it with the grievance coordinator within fourteen calendar days from the date the grievance response was sent to the AIC by the grievance coordinator. *Id.* An AIC may appeal the decision made by the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of the date the first grievance appeal response was sent to the AIC. *Id.* ¶ 12. The Assistant Director's or designee's decision on an AIC's grievance appeal is final and not subject to further review. *Id.*

The Court finds Defendant carried his initial burden to show that Plaintiff failed to properly exhaust his administrative remedies with respect to all claims. All the incidents in Plaintiff's Complaint occurred prior to November 2020 but he did not begin filling grievances related to these incidents until November 22, 2020. Accordingly, SRCI permissibly concluded that Plaintiff failed to grieve them within the 14-day deadline. Plaintiff essentially concedes this point and argues instead that the administrative procedures were unavailable to him.

Plaintiff argues the administrative procedures were unavailable to him for four reasons. First, Plaintiff contends that he was misled about the grievance rules. First Pl. Resp. at 3, ECF 52. Second, he contends that he did not have access to the relevant administrative rules. *Id.* at 17. Third, he argues that he could not appeal to ask for an exception to the 14-day deadline once he was put on a grievance restriction. Second Pl. Resp. at 2, ECF 69-2. Finally, he argues that he missed the 14-day deadline to file a grievance related to his medical negligence claims because

he had no reason to know he had a medical problem until the 14-day time limit had expired. First Pl. Resp. at 3–4, 17.

As to Plaintiff's first contention, he submits no evidence that he was misled about the grievance rules by SRCI staff. To the contrary, the grievance forms support that SRCI provided correct information in response to each of his November and December 2020 grievances. *See supra* (explaining why SRCI returned each of Plaintiff's grievances).

Regarding access to the administrative rules, Plaintiff asserts that (1) he never attended an orientation upon entering the Oregon Department of Corrections where he would have learned about the grievance procedures, (2) he did not have access to the law library or the Snake River Correctional Rule Book following the alleged incidents because he "was in Disciplinary Segregation for the majority of time following each incident," and (3) COVID-19 lock down procedures interrupted access to the library. First Pl. Resp. at 18. Plaintiff submits no admissible evidence to support his claims.

"AICs are informed of [the grievance procedures] in the AIC Orientation Packet they receive when they first arrive at an ODOC facility." Taylor Decl. Second ¶ 4, ECF 65; Taylor Decl. ¶ 6. Plaintiff received an "Admissions and Orientation" at Eastern Oregon Correctional Institution when he entered the Oregon Department of Corrections. Taylor Decl. Second ¶ 4, ECF 65.

In addition to the packet at orientation, information about the grievance procedures is contained in the AIC handbook and grievance forms which "are available on all housing units." Taylor Decl. ¶ 6. "Grievance instructions are also available with the grievance forms." *Id.* Therefore, even taking the statements in Plaintiff's briefs as true, Plaintiff does not create a question of fact about whether the grievance procedure was unavailable to him on these grounds.

This is bolstered by the fact that Plaintiff has filed ten other grievances since being incarcerated at SRCI, demonstrating that he has experience with and an understanding of the grievance process. Taylor Decl. Second Ex. 11 at 1, ECF 65-2.

Plaintiff's third contention is unavailing. Plaintiff does not establish when he was placed on a grievance restriction, but the record suggests it was sometime around December 29, 2020. Regardless, Plaintiff was not on a grievance restriction when SRCI rejected his first grievance form related to alleged medical negligence, yet he chose not to correct and re-file it. SRCI returned Plaintiff's second grievance on December 2, 2020 with the explanation that the alleged incidents were not filed within the 14-day deadline. Plaintiff was not on a grievance restriction then either but did not utilize the opportunity to appeal and explain why the 14-day deadline should not apply to the alleged incidents of medical malpractice.

Finally, Plaintiff argues that the grievance procedure was "unavailable" to him because he did not know of the alleged medical negligence until 14-days had passed. While this may be true, Plaintiff did not file grievance forms related to the dental cleanings and filling until several months after he learned of his alleged injuries. Regarding the teeth cleanings, Plaintiff admits that he learned of the alleged medical negligence at the second dental exam on January 16, 2019. Second Pl. Resp. at 3, ECF 69. Still, Plaintiff did not file a grievance related to the dental cleanings until November 2020.

The same is true for any claims related to his filling. Plaintiff had a recall exam on September 23, 2019 where he learned that the filling would need to be replaced. He then had the filling replaced on November 4, 2019. Thus, the November 4, 2019 replacement triggered the 14-day timeline. But again, he did not file a grievance related to the filling until November 2020.

Accordingly, for his claims related to the dental cleanings and filling, Plaintiff cannot show that the grievance procedure was unavailable to him.

Plaintiff relies on *Borges v. Piatkowski*, 337 F. Supp. 2d 424 (W.D.N.Y. 2004) to make his argument. The circumstances in *Borges* are distinguishable from his case. In *Borges*, during a wisdom tooth extraction "a dental drill burr broke off and was left in the [plaintiff's] tooth socket." *Id.* at 425. The plaintiff complained of severe pain following the procedure but did not know about the drill burr. *Id.* Two years later, the foreign object and a reactive lesion were discovered in his mouth. *Id.* The treating doctors did not tell him about these findings and "did not do anything to remove the foreign object or otherwise treat the reactive lesion that was causing plaintiff pain." *Id.* Two months later, plaintiff was transferred to a different facility and learned about the foreign object and reactive lesion. *Id.* at 426. On these facts, the Court found that the plaintiff had no "available" administrative remedies to exhaust because he did not know about the negligence and failure to treat until he was transferred out of the facility where it occurred. *Id.* at 427.

Here, Plaintiff learned about the alleged medical negligence while he was still in custody at SRCI where the dental cleanings and filling occurred. A facility transfer did not prevent him from filing a grievance once he learned of the alleged medical negligence, which in both instances occurred within weeks of the first exams. Additionally, unlike *Borges*, there is no indication that SRCI medical providers failed to notify Plaintiff of any significant findings from his exams.

Plaintiff's claims concerning his request for a partial denture may have been timely filed. Plaintiff does not provide evidence to support his allegations about when he learned of his injury related to the partial denture. For the purposes of this analysis, the Court assumes the statements

in his brief are true. Plaintiff alleges that at the March 1, 2020 visit, Defendant informed him that he would submit an appeal to the therapeutic level of care committee on his behalf regarding his request for a partial denture. First Pl. Resp. at 13. According to Plaintiff, he did not learn that Defendant did not submit the appeal until Defendant visited Plaintiff outside his cell on November 16, 2020. *Id.* at 14. Accepting these facts as true, Plaintiff's first grievance, and possibly second grievance, were timely filed. However, this finding does not change the outcome of these claims, as SRCI rejected his grievances for other valid reasons.

Plaintiff's first grievance was rejected because of its form and Plaintiff failed to correct and resubmit it. Plaintiff's second grievance was rejected because Plaintiff grieved multiple issues in one grievance form, in addition to the 14-day deadline justification. There is no evidence Plaintiff appealed this finding or submitted a new grievance that complied with the rule. So, although Plaintiff may be able to show that he filed a grievance related to his request for a partial denture within the 14-day timeline, SRCI rejected the grievances for other permissible reasons.

The Court finds that Plaintiff failed to properly exhaust his administrative remedies or show that such remedies were effectively unavailable to him with respect to all claims and grants Defendant summary judgment on this basis.

//

//

//

//

//

//

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment [40]. This action is dismissed.

IT IS SO ORDERED.

DATED:   September 14, 2021   .

MARCO A. HERNÁNDEZ
United States District Judge